# UNITED STATES DISTRICT COURT
for the
### Western District of Kentucky
### Owensboro Division

| | | |
|---|---|---|
| Edmond Sinani | ) | |
|     *Plaintiff* | ) | |
| | ) | |
| v. | ) | Case No. 4:14-CV-70-M |
| | ) | |
| Asset Acceptance, LLC | ) | |
|     *Defendant* | ) | |
| Serve: | ) | |
|     CSC-Lawyer's Incorporating | ) | |
|         Service Company | ) | |
|     421 W. Main St. | ) | |
|     Frankfort, KY 40601 | ) | |
| | ) | |
| LVNV Funding, LLC | ) | |
|     *Defendant* | ) | |
| Serve: | ) | |
|     Corporation Service Company | ) | |
|     2711 Centerville Road, Suite 400 | ) | |
|     Wilmington, DE 19808 | ) | |
| | ) | |
| Midland Credit Management, Inc. | ) | |
|     *Defendant* | ) | |
| Serve: | ) | |
|     Corporation Service Company | ) | |
|     2900 SW Wanamaker Dr., Suite 204 | ) | |
|     Topeka, KS 66614 | ) | |
| | ) | |
| Midland Funding, LLC | ) | |
|     *Defendant* | ) | |
| Serve: | ) | |
|     CSC-Lawyer's Incorporating | ) | |
|         Service Company | ) | |
|     421 W. Main St. | ) | |
|     Frankfort, KY 40601 | ) | |
| | ) | |
| Portfolio Recovery Associates, LLC | ) | |
|     *Defendant* | ) | |
| Serve: | ) | |
|     Corporation Service Company | ) | |
|     2711 Centerville Road, Suite 400 | ) | |
|     Wilmington, DE 19808 | ) | |

| | |
|---|---|
| Berlin-Wheeler, Inc. | ) |
|     *Defendant* | ) |
| Serve: | ) |
|     Mark C. Wheeler | ) |
|     2942A SW Wanamaker Dr., Suite 200 | ) |
|     Topeka, KS 66614 | ) |
| | ) |
| Chase Bank USA, N.A. | ) |
|     *Defendant* | ) |
| Serve: | ) |
|     201 North Walnut Street | ) |
|     Wilmington, DE 19801 | ) |
| | ) |
| Department Stores National Bank | ) |
|     *Defendant* | ) |
| Serve: | ) |
|     701 East 60th Street | ) |
|     Sioux Falls, SD 57104 | ) |
| | ) |
| 1st Financial Bank USA | ) |
|     *Defendant* | ) |
| Serve: | ) |
|     331 North Dakota Dunes Boulevard | ) |
|     Dakota Dunes, SD 57049 | ) |

## **COMPLAINT and DEMAND FOR JURY TRIAL**

### INTRODUCTION

1. This is an action by a consumer seeking damages and declaratory relief for Defendants' violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692 *et seq.*, which prohibits debt collectors from engaging in abusive, deceptive, and unfair collection practices; and/or Defendants' violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, which was enacted to promote fairness and accuracy in credit reporting.

### JURISDICTION

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, FDCPA, 15 U.S.C. §1692k(d), and 15 U.S.C. § 1681p. Declaratory relief is available pursuant to 28 U.S.C. § 2201.

### PARTIES

3. Plaintiff Edmond Sinani is a natural person who resides in Henderson County, Ky. Plaintiff is a "consumer" within the meaning of the FDCPA, as defined at 15 U.S.C. § 1692a(3).

4. Defendant Asset Acceptance, LLC ("AAL") is a Michigan limited liability company, with its principal place of business located at 28405 Van Dyke Avenue, Warren, MI 48093. Asset has registered with the Kentucky Secretary of State, and is engaged in the business of purchasing debt from creditors and collecting these debts from citizens of this commonwealth, and/or collecting debts on behalf of other creditors and debt collectors.

5. AAL is a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a(6), and a "furnisher" and "user" of information within the meaning of the FCRA.

6. Defendant LVNV Funding, LLC ("LVNV") is a Delaware limited liability company, with its principal place of business located at Bank of America Building, 200 Meeting Street, Suite #206, Charleston, SC 29401-3187. LVNV has not registered with the Kentucky Secretary of State, and is engaged in the business of purchasing debt from creditors and collecting these debts from citizens of this commonwealth, and/or collecting debts on behalf of other creditors and debt collectors.

7. LVNV is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6), and a "furnisher" and "user" of information within the meaning of the FCRA.

8. Defendant Midland Credit Management, Inc. ("MCM") is a Kansas corporation, with its principal place of business located at 3111 Camino Del Rio North, Suite 1300, San Diego, CA 92108. MCM has not registered with the Kentucky Secretary of State, and is engaged in the business of purchasing debt from creditors and collecting these debts from citizens of this commonwealth, and/or collecting debts on behalf of other creditors and debt collectors.

9. MCM is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6), and a "furnisher" and "user" of information within the meaning of the FCRA.

10. Defendant Midland Funding, LLC ("Midland") is a Delaware corporation, with its principal place of business located at 3111 Camino Del Rio North, Suite 1300, San Diego, CA 92108. MCM has registered with the Kentucky Secretary of State, and is engaged in the business of purchasing debt from creditors and collecting these debts from citizens of this commonwealth, and/or collecting debts on behalf of other creditors and debt collectors.

11. Midland is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6), and a "furnisher" and "user" of information within the meaning of the FCRA.

12. Defendant Portfolio Recovery Associates, LLC ("PRA") is a Delaware limited liability company, with its principal place of business located at 120 Corporate Boulevard, Norfolk, VA 23502. PRA has not registered with the Kentucky Secretary of State, and is engaged in the business of purchasing debt from creditors and collecting these debts from citizens of this commonwealth, and/or collecting debts on behalf of other creditors and debt collectors.

13. PRA is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6), and a "furnisher" and "user" of information within the meaning of the FCRA.

14. Defendant Berlin-Wheeler, Inc. ("Berlin-Wheeler") is a Kansas corporation, with its principal place of business located at 2942A SW Wanamaker Drive, Topeka, KS 66614. Berlin-Wheeler has not registered with the Kentucky Secretary of State, and is engaged in the business of collecting debts from citizens of this commonwealth, and/or collecting debts on behalf of other creditors and debt collectors.

15. Berlin-Wheeler is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6), and a "furnisher" and "user" of information within the meaning of the FCRA.

16. Defendant Chase Bank USA, N.A. ("Chase") is a national bank regulated by the Office of the Comptroller of the Currency with its headquarters located at 201 West Walnut Street, Wilmington, DE 19801.

17. Chase is a "furnisher" and "user" of information within the meaning of the FCRA.

18. Defendant Department Stores National Bank ("DSNB") is a national bank regulated by the Office of the Comptroller of the Currency with its headquarters located at 701 East 60th Street, Sioux Falls, SD 57104.

19. DSNB is a "furnisher" and "user" of information within the meaning of the FCRA.

20. Defendant 1st Financial Bank USA ("1st Financial") is a state-chartered bank regulated by the Federal Deposit Insurance Corporation with its headquarters located at 331 North Dakota Dunes Boulevard, Dakota Dunes, SD 57049.

21. 1st Financial is a "furnisher" and "user" of information within the meaning of the FCRA.

**STATEMENT OF FACTS**

22. Mr. Sinani is the victim of identity theft.

23. Numerous accounts and debts have been improperly opened in Mr. Sinani's name.

24. As result of the identity theft, negative information has been and is being furnished to one or more consumer credit reporting agencies concerning Mr. Sinani and debts that he does not owe.

25. As a result of identity theft and false information, Mr. Sinani filed bankruptcy to rid himself of debts he does not owe but which continue to haunt him.

26. In August of 2013, Mr. Sinani obtained a copy of a Consumer Liability Report (CLR) from CIN Legal Data Services.

27. Mr. Sinani's CLR includes information recovered from the three major consumer credit reporting agencies: Experian, Equifax, and Trans Union.

28. Mr. Sinani's CLR includes false negative information furnished by Defendants.

29. Defendants furnished negative credit information concerning Mr. Sinani to one or more consumer reporting agencies for purposes of collecting a debt from him. ("[R]eporting a debt to a credit reporting agency is 'a powerful tool designed, in part, to wrench compliance with payment terms.'" Sullivan v. Equifax, Inc., CIV.A. 01-4336, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002)).

30. In an attempt to rectify the numerous errors on his consumer credit report, Mr. Sinani sent dispute letters to each of the three major consumer reporting agencies: Equifax Information Services LLC; Experian Information Solutions, Inc.; and Trans Union, LLC.

31. Upon information and belief, upon receipt of Mr. Sinani's dispute letters, the three consumer reporting agencies sent each Defendant notice of Mr. Sinani's dispute pursuant to 15 USC § 1681i(a), which triggered Defendants' duties to investigate the dispute and the debt.

32. Upon information and relief, as a result of Mr. Sinani's dispute, Defendants AAL, Berlin-Wheeler, Chase, DSNB, MCM, Midland, LVNV, and PRA all sent notification to Equifax verifying Mr. Sinani's debt as being correct and accurate as reported on Mr. Sinani's consumer credit report. Additionally, Equifax deleted information furnished by other furnishers of false information on Mr. Sinani's credit report that are not defendants in this action.

33. As a result of Mr. Sinani's dispute letter, Trans Union deleted the information furnished by AAL, Chase, DSNB, 1st Financial, LVNV, Midland, and PRA. Additionally, Trans Union deleted information furnished by other furnishers of false information on Mr. Sinani's credit report that are not defendants in this action.

I.  **Facts Relating to Asset Acceptance, LLC**

34. According to Mr. Sinani's CLR, AAL furnished negative credit information about Mr. Sinani in connection with a debt originated by Value City Furniture.

35. Upon information and belief, someone else opened the Value City account in Mr. Sinani's name without his permission or consent.

36. According to the information furnished by AAL, $3,899.00 was the current amount of the Value City debt as of July 23, 2013.

37. Additionally, according to the information furnished by AAL, AAL opened the account in February 2009 and $2,823.00 was the amount due on the date on the date that AAL opened the account.

38. As of the date of the filing this complaint, AAL has not filed suit against Mr. Sinani in attempt to collect the Value City debt.

39. Upon information and belief, AAL had no legal right to accrue and assess the $1,076.00 in interest and/or fees on the Value City debt as reflected on Mr. Sinani's CLR.

40. Attempting to collect a debt that a consumer does not owe violates the FDCPA.

41. Accruing and assessing unauthorized interest on a debt in connection with attempting to collect a debt violates the FDCPA.

42. Upon information and belief, upon receipt of Mr. Sinani's dispute letters, the three consumer reporting agencies sent AAL notice of Mr. Sinani's dispute pursuant to 15 U.S.C. § 1681i(a), which triggered AAL's duty to investigate the dispute and the debt.

43. Upon information and belief, AAL failed to conduct a reasonable investigation of Mr. Sinani's debt and his dispute.

44. Upon information and belief, AAL falsely reported back to one or more consumer reporting agencies that its furnished information concerning Mr. Sinani and the Value City debt was correct and accurate.

II.     **Facts Relating to LVNV Funding, LLC**

45. According to Mr. Sinani's CLR, LVNV furnished negative credit information about Mr. Sinani in connection with a debt originated by HSBC Bank USA, N.A. branded as a Best Buy credit card.

46. Upon information and belief, someone else opened the Best Buy credit card account in Mr. Sinani's name without his permission or consent.

47. Attempting to collect a debt that a consumer does not owe violates the FDCPA.

48. Upon information and belief, upon receipt of Mr. Sinani's dispute letters, the three consumer reporting agencies sent LVNV notice of Mr. Sinani's dispute pursuant to 15 U.S.C. § 1681i(a), which triggered LVNV's duty to investigate the dispute and the debt.

49. Upon information and belief, LVNV failed to conduct a reasonable investigation of Mr. Sinani's debt and his dispute.

50. Upon information and belief, LVNV falsely reported back to one or more consumer reporting agencies that its furnished information concerning Mr. Sinani and the HSBC debt was correct and accurate.

III.    **Facts Relating to Midland Credit Management, Inc.**

51. Upon information and belief, MCM furnished negative credit information about Mr. Sinani in connection with a debt originated by HSBC Bank Nevada, N.A. ("HSBC").

52. Upon information and belief, someone else opened the HSBC account in Mr. Sinani's name without his permission or consent.

53. According to the information furnished by MCM, $1,698.00 was the current amount of the HSBC debt as of July 28, 2013.

54. Additionally, according to the information furnished by MCM, MCM opened the account in October 2008 and $1,148.00 was the amount due on the date on the date that MCM opened the account.

55. As of the date of the filing this complaint, MCM has not filed suit against Mr. Sinani in attempt to collect the HSBC debt.

56. Upon information and belief, MCM had no legal right to accrue and assess the $550.00 in interest and/or fees on the HSBC debt as reflected on Mr. Sinani's CLR.

57. As a result of Mr. Sinani's dispute letters, MCM sent Mr. Sinani a letter dated October 14, 2013.

58. MCM's October 14th letter stated that MCM had deleted the negative information from Mr. Sinani's consumer reports concerning the HSBC debt.

59. MCM's October 14th letter falsely represented that $1,713.51 was the current amount due on the HSBC debt.

60. Upon information and belief, MCM had no legal right to accrue and assess the $565.51in interest and/or fees on the HSBC debt as stated on the October 14th letter.

61. Attempting to collect a debt that a consumer does not owe violates the FDCPA.

62. Accruing and assessing unauthorized interest on a debt in connection with attempting to collect a debt violates the FDCPA.

63. Upon information and belief, upon receipt of Mr. Sinani's dispute letters, the three consumer reporting agencies sent MCM notice of Mr. Sinani's dispute pursuant to 15 U.S.C. § 1681i(a), which triggered MCM's duty to investigate the dispute and the debt.

64. Upon information and belief, MCM failed to conduct a reasonable investigation of Mr. Sinani's debt and his dispute.

65. Upon information and belief, MCM falsely reported back to one or more consumer reporting agencies that its furnished information concerning Mr. Sinani and the HSBC debt was correct and accurate.

### IV. Facts Relating to Midland Funding, LLC

66. According to Mr. Sinani's CLR, Midland furnished negative credit information about Mr. Sinani in connection with a debt originated by CIT Bank.

67. Upon information and belief, someone else opened the CIT Bank account in Mr. Sinani's name without his permission or consent.

68. According to the information furnished by Midland, $3,993.00 was the current amount of the CIT Bank debt as of July 28, 2013.

69. Additionally, according to the information furnished by Midland, Midland opened the account in February 2011 and $2,321.00 was the amount due on the date on the date that Midland opened the account.

70. As of the date of the filing this complaint, Midland has not filed suit against Mr. Sinani in attempt to collect the CIT Bank debt.

71. Upon information and belief, Midland had no legal right to accrue and assess the $1,672.00 in interest and/or fees on the CIT Bank debt as reflected on Mr. Sinani's CLR.

72. Attempting to collect a debt that a consumer does not owe violates the FDCPA.

73. Accruing and assessing unauthorized interest on a debt in connection with attempting to collect a debt violates the FDCPA.

74. Upon information and belief, upon receipt of Mr. Sinani's dispute letters, the three consumer reporting agencies sent Midland notice of Mr. Sinani's dispute pursuant to 15 U.S.C. § 1681i(a), which triggered Midland's duty to investigate the dispute and the debt.

75. Upon information and belief, Midland failed to conduct a reasonable investigation of Mr. Sinani's debt and his dispute.

76. Upon information and belief, Midland falsely reported back to one or more consumer reporting agencies that its furnished information concerning Mr. Sinani and the HSBC debt was correct and accurate.

### V. Facts Relating to Portfolio Recovery Associates, LLC

77. Upon information and belief, PRA furnished negative credit information about Mr. Sinani in connection with a debt originated by Capital One Bank USA, N.A. ("Capital One").

78. Upon information and belief, someone else opened the Capital One Account in Mr. Sinani's name without his permission or consent.

79. According to the information furnished by PRA, $1,283.00 was the current amount of the Capital One debt as of August 5, 2013.

80. Additionally, according to the information furnished by PRA, PRA opened the account in October 2007 and $929.00 was the amount due on the date on the date that PRA opened the account.

81. Upon information and belief, PRA had no legal right to accrue and assess the $334.00 in interest and/or fees on the Capital One debt as reflected on Mr. Sinani's CLR.

82. Attempting to collect a debt that a consumer does not owe violates the FDCPA.

83. Accruing and assessing unauthorized interest on a debt in connection with attempting to collect a debt violates the FDCPA.

84. Upon information and belief, upon receipt of Mr. Sinani's dispute letters, the three consumer reporting agencies sent PRA notice of Mr. Sinani's dispute pursuant to 15 U.S.C. § 1681i(a), which triggered PRA's duty to investigate the dispute and the debt.

85. Upon information and belief, PRA failed to conduct a reasonable investigation of Mr. Sinani's debt and his dispute.

86. Upon information and belief, PRA falsely reported back to one or more consumer reporting agencies that its furnished information concerning Mr. Sinani and the Capital One debt was correct and accurate.

## VI. Facts Relating to Berlin-Wheeler, Inc.

87. Upon information and belief, Berlin-Wheeler furnished to one or more consumer reporting agencies negative credit information concerning Mr. Sinani and a debt originated by Empire District Electric in the amount of $436.00.

88. Upon information and belief, someone else opened the Empire District Electric utility account in Mr. Sinani's name without his permission or consent.

89. Attempting to collect a debt that a consumer does not owe violates the FDCPA.

90. Upon information and belief, upon receipt of Mr. Sinani's dispute letters, the three consumer reporting agencies sent Berlin-Wheeler notice of Mr. Sinani's dispute pursuant to 15 U.S.C. § 1681i(a), which triggered Berlin-Wheeler's duty to investigate the dispute and the debt.

91. Upon information and belief, Berlin-Wheeler failed to conduct a reasonable investigation of Mr. Sinani's debt and his dispute.

92. Upon information and belief, Berlin-Wheeler falsely reported back to one or more consumer reporting agencies that its furnished information concerning Mr. Sinani and the Empire

District Electric debt was correct and accurate.

### VII. Facts Relating to Chase Bank USA, N.A.

93. Upon information and belief, Chase furnished to one or more consumer reporting agencies negative credit information concerning Mr. Sinani and an account ending in 5076.

94. Upon information and belief, someone else opened the Chase account ending in 5076 in Mr. Sinani's name without his permission or consent.

95. Upon information and belief, upon receipt of Mr. Sinani's dispute letters, the three consumer reporting agencies sent Chase notice of Mr. Sinani's dispute pursuant to 15 USCS § 1681i(a), which triggered Chase's duty to investigate the dispute and the debt.

96. Upon information and belief, Chase failed to conduct a reasonable investigations of Mr. Sinani's debt and his dispute.

97. Upon information and belief, Chase falsely reported back to one or more consumer reporting agencies that its furnished information concerning Mr. Sinani and opened the Chase account ending in 5076 was correct and accurate.

### VIII. Facts Relating to Department Stores National Bank

98. Upon information and belief, Department Stores National Bank furnished to one or more consumer reporting agencies negative credit information concerning Mr. Sinani and a Macy's credit card account ending in 1920.

99. Upon information and belief, someone else opened the DSNB/Macy's account ending in 1920 in Mr. Sinani's name without his permission or consent.

100. Upon information and belief, upon receipt of Mr. Sinani's dispute letters, the three consumer reporting agencies sent DSNB/Macy's notice of Mr. Sinani's dispute pursuant to 15 U.S.C. § 1681i(a), which triggered DSNB/Macy's duty to investigate the dispute and the debt.

101. Upon information and belief, DSNB/Macy's failed to conduct a reasonable investigation of Mr. Sinani's debt and his dispute.

102. Upon information and belief, DSNB/Macy's falsely reported back to one or more consumer reporting agencies that its furnished information concerning Mr. Sinani and opened the DSNB/Macy's account ending in 1920 was correct and accurate.

### IX. Facts Relating to 1st Financial Bank USA

103. Upon information and belief, 1st Financial furnished to one or more consumer reporting agencies negative credit information concerning Mr. Sinani and an account ending in 3875.

104. Upon information and belief, someone else opened the 1st Financial account ending in 3875 in Mr. Sinani's name without his permission or consent.

105. Upon information and belief, upon receipt of Mr. Sinani's dispute letters, the three consumer reporting agencies sent 1st Financial notice of Mr. Sinani's dispute pursuant to 15 U.S.C. § 1681i(a), which triggered 1st Financial's duty to investigate the dispute and the debt.

106. Upon information and belief, 1st Financial failed to conduct a reasonable investigation of Mr. Sinani's debt and his dispute.

107. Upon information and belief, First Financial falsely reported back to one or more consumer reporting agencies that its furnished information concerning Mr. Sinani and opened the First Financial account ending in 3875 was correct and accurate.

## CLAIMS FOR RELIEF

I. **Claims against Asset Acceptance, LLC**

A. **Violations of the FDCPA**

108. The foregoing acts and omissions of Asset Acceptance, LLC ("AAL") constitute violations of the FDCPA, including, but not limited to:

    **a.** Violation of 15 U.S.C. §1692e(2)(A): AAL falsely represented that Mr. Sinani owed AAL any debt, and AAL falsely represented the amount owed on the Value City debt by adding interest or fees to the debt that AAL had no legal right to collect from Mr. Sinani;

    **b.** Violation of 15 U.S.C. §1692e(5): AAL attempted to collect interest or fees on the Value City debt that Midland had no legal right to collect from Mr. Sinani thereby threatening to take an action that cannot legally be taken;

    **c.** Violation of 15 U.S.C. §1692e(8): AAL furnished false credit information to one or more consumer reporting agencies concerning Mr. Sinai and the Value City debt by reporting that Mr. Sinani owed AAL any debt, and by adding interest to the debt that AAL knew or should have known that it had no legal right to collect from Mr. Sinani;

    **d.** Violation of 15 U.S.C. §1692e(10): AAL falsely represented that Mr. Sinani owed AAL any debt, and AAL falsely represented the amount owed on the Value City debt by adding interest or fees to the debt that AAL had no legal right to collect from Mr. Sinani; and

    **e.** Violation of 15 U.S.C. § 1692f(1): AAL attempted to collect an amount not "authorized by the agreement creating the debt or permitted by law" in violation of 15 U.S.C. § 1692f(1) by including but not limited to attempting to collect interest and/or fees on the Value City debt that AAL had neither a contractual nor statutory right to collect.

### B. Violations of the FCRA

109. Upon information and belief, after being informed by consumer reporting agencies that Mr. Sinani disputed the accuracy of information that AAL provided concerning Mr. Sinani to consumer reporting agencies, AAL willfully failed to conduct a proper investigation of Mr. Sinani's dispute that he was not liable to AAL in connection with the Value City debt as falsely reported by AAL.

110. Upon information and belief, AAL willfully failed to review all relevant information purportedly provided by the consumer reporting agencies to AAL in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

111. Upon information and belief, AAL willfully failed to direct such consumer reporting agencies to delete inaccurate information about Mr. Sinani pertaining to the Value City debt as required by 15 U.S.C. § 1681s-2(b)(C).

112. AAL is liable to the Plaintiff for statutory and actual damages he has sustained by reason of its violation of the FCRA, in an amount to be determined by the trier of fact, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681n.

## II. Claims against LVNV Funding, LLC

### A. Violations of the FDCPA

113. The foregoing acts and omissions of LVNV Funding, LLC ("LVNV") constitute violations of the FDCPA, including, but not limited to:

    a. Violation of 15 U.S.C. §1692e(2)(A): LVNV falsely represented that Mr. Sinani owed LVNV any debt;

    b. Violation of 15 U.S.C. § 1692e(8): LVNV reported credit information to consumer reporting agencies that LVNV knew or should have known was false, including reporting that Mr. Sinani owed a debt that he did not in fact owe; and

    c. Violation of 15 U.S.C. §1692e(10): LVNV falsely and deceptively represented that Mr. Sinani owed a debt that he did not and does not owe.

### B. Violations of the FCRA

114. Upon information and belief, after being informed by consumer reporting agencies that Mr. Sinani disputed the accuracy of information that LVNV provided concerning Mr. Sinani to consumer reporting agencies, LVNV willfully failed to conduct a proper investigation of Mr. Sinani's dispute that he was not liable to LVNV in connection with the Best Buy credit card debt as falsely reported by LVNV.

115. Upon information and belief, LVNV willfully failed to review all relevant information purportedly provided by the consumer reporting agencies to LVNV in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

116. Upon information and belief, LVNV willfully failed to direct such consumer reporting agencies to delete inaccurate information about Mr. Sinani pertaining to the Best Buy credit card debt as required by 15 U.S.C. § 1681s-2(b)(C).

117. LVNV is liable to the plaintiff for statutory and actual damages he has sustained by reason of its violation of the FCRA, in an amount to be determined by the trier of fact, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681n.

### III. Claims against Midland Credit Management, Inc.

#### A. Violations of the FDCPA

118. The foregoing acts and omissions of Midland Credit Management, Inc. ("MCM") constitute violations of the FDCPA, including, but not limited to:

    **a.** Violation of 15 U.S.C. §1692e(2)(A): MCM falsely represented that Mr. Sinani owed MCM any debt, and MCM falsely represented the amount owed on the HSBC debt by adding interest or fees to the debt that MCM had no legal right to collect from Mr. Sinani;

    **b.** Violation of 15 U.S.C. §1692e(5): MCM attempted to collect interest or fees on the HSBC debt that Midland had no legal right to collect from Mr. Sinani thereby threatening to take an action that cannot legally be taken;

    **c.** Violation of 15 U.S.C. §1692e(8): MCM furnished false credit information to one or more consumer reporting agencies concerning Mr. Sinai and the HSBC debt by reporting that Mr. Sinani owed MCM any debt, and by adding interest to the debt that MCM knew or should have known that it had no legal right to collect from Mr. Sinani;

    **d.** Violation of 15 U.S.C. §1692e(10): MCM falsely represented that Mr. Sinani owed MCM any debt, and MCM falsely represented the amount owed on the HSBC debt by adding interest or fees to the debt that MCM had no legal right to collect from Mr. Sinani; and

    **e.** Violation of 15 U.S.C. § 1692f(1): MCM attempted to collect an amount not "authorized by the agreement creating the debt or permitted by law" in violation of 15 U.S.C. § 1692f(1) by including but not limited to attempting to collect interest and/or fees on the HSBC debt that MCM had neither a contractual nor statutory right to collect.

### B. Violations of the FCRA

119. Upon information and belief, after being informed by consumer reporting agencies that Mr. Sinani disputed the accuracy of information that MCM provided concerning Mr. Sinani to consumer reporting agencies, MCM willfully failed to conduct a proper investigation of Mr. Sinani's dispute that he was not liable to MCM in connection with the HSBC debt as falsely reported by MCM.

120. Upon information and belief, MCM willfully failed to review all relevant information purportedly provided by the consumer reporting agencies to MCM in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

121. Upon information and belief, MCM willfully failed to direct such consumer reporting agencies to delete inaccurate information about Mr. Sinani pertaining to the HSBC debt as required by 15 U.S.C. § 1681s-2(b)(C).

122. MCM is liable to the plaintiff for statutory and actual damages he has sustained by reason of its violation of the FCRA, in an amount to be determined by the trier of fact, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681n.

## IV. Claims against Midland Funding, LLC

### A. Violations of the FDCPA

123. The foregoing acts and omissions of Midland Funding, LLC ("Midland") constitute violations of the FDCPA, including, but not limited to:

    **a.** Violation of 15 U.S.C. §1692e(2)(A): Midland falsely represented that Mr. Sinani owed Midland any debt, and Midland falsely represented the amount owed on the CIT Bank debt by adding interest or fees to the debt that Midland had no legal right to collect from Mr. Sinani;

    **b.** Violation of 15 U.S.C. §1692e(5): Midland attempted to collect interest or fees on the CIT Bank debt that Midland had no legal right to collect from Mr. Sinani thereby threatening to take an action that cannot legally be taken;

    **c.** Violation of 15 U.S.C. §1692e(8): Midland furnished false credit information to one or more consumer reporting agencies concerning Mr. Sinai and the CIT Bank debt by reporting that Mr. Sinani owed Midland any debt, and by adding interest to the debt that Midland knew or should have known that it had no legal right to collect from Mr. Sinani;

    **d.** Violation of 15 U.S.C. §1692e(10): Midland falsely represented that Mr. Sinani owed Midland any debt, and Midland falsely represented the amount owed on the CIT Bank debt by adding interest or fees to the debt that Midland had no legal right to collect from Mr. Sinani; and

  **e.** Violation of 15 U.S.C. § 1692f(1): Midland attempted to collect an amount not "authorized by the agreement creating the debt or permitted by law" in violation of 15 U.S.C. § 1692f(1) by including but not limited to attempting to collect interest and/or fees on the CIT Bank debt that Midland had neither a contractual nor statutory right to collect.

 **B.** **Violations of the FCRA**

  124. Upon information and belief, after being informed by consumer reporting agencies that Mr. Sinani disputed the accuracy of information that Midland provided concerning Mr. Sinani to consumer reporting agencies, Midland willfully failed to conduct a proper investigation of Mr. Sinani's dispute that he was not liable to Midland in connection with the CIT Bank debt as falsely reported by Midland.

  125. Upon information and belief, Midland willfully failed to review all relevant information purportedly provided by the consumer reporting agencies to Midland in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

  126. Upon information and belief, Midland willfully failed to direct such consumer reporting agencies to delete inaccurate information about Mr. Sinani pertaining to the CIT Bank debt as required by 15 U.S.C. § 1681s-2(b)(C).

  127. Midland is liable to the plaintiff for statutory and actual damages he has sustained by reason of its violation of the FCRA, in an amount to be determined by the trier of fact, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681n.

**V.** **Claims against Berlin-Wheeler, Inc.**

 **A.** **Violations of the FDCPA**

  128. The foregoing acts and omissions of Berlin-Wheeler, Inc. constitute violations of the FDCPA, including, but not limited to:

  **a.** Violation of 15 U.S.C. §1692e(2)(A): Berlin-Wheeler falsely represented that Mr. Sinani owed Berlin-Wheeler any debt;

  **b.** Violation of 15 U.S.C. § 1692e(8): Berlin-Wheeler reported credit information to consumer reporting agencies that Berlin-Wheeler knew or should have known was false, including reporting that Mr. Sinani owed a debt that he did not in fact owe; and

  **c.** Violation of 15 U.S.C. §1692e(10): Berlin-Wheeler falsely and deceptively represented that Mr. Sinani owed a debt that he did not and does not owe.

B.     **Violations of the FCRA**

129.   Upon information and belief, after being informed by consumer reporting agencies that Mr. Sinani disputed the accuracy that Berlin-Wheeler provided concerning Mr. Sinani to consumer reporting agencies, Berlin-Wheeler willfully failed to conduct a proper investigation of Mr. Sinani's dispute that he was not liable to Berlin-Wheeler in connection with the Empire District Electric debt as falsely reported by Berlin Wheeler.

130.   Upon information and belief, Berlin-Wheeler willfully failed to review all relevant information purportedly provided by the consumer reporting agencies to Berlin-Wheeler in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

131.   Upon information and belief, Berlin-Wheeler willfully failed to direct such consumer reporting agencies to delete inaccurate information about Mr. Sinani pertaining to the Empire District Electric debt as required by 15 U.S.C. § 1681s-2(b)(C).

132.   Berlin-Wheeler is liable to the plaintiff for statutory and actual damages he has sustained by reason of its violation of the FCRA, in an amount to be determined by the trier of fact, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681n.

## VI.  Claims against Chase Bank USA, N.A.

133.   Upon information and belief, after being informed by consumer reporting agencies that Mr. Sinani disputed the accuracy of information that Chase provided concerning Mr. Sinani to consumer reporting agencies, Chase willfully failed to conduct a proper investigation of Mr. Sinani's dispute that he was not liable to Chase in connection with the Chase account ending in 5076 debt as falsely reported by Chase.

134.   Upon information and belief, Chase willfully failed to review all relevant information purportedly provided by the consumer reporting agencies to Chase in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

135.   Upon information and belief, Chase willfully failed to direct such consumer reporting agencies to delete inaccurate information about Mr. Sinani pertaining to the Chase account ending in 5076 debt as required by 15 U.S.C. § 1681s-2(b)(C).

136.   Chase is liable to the plaintiff for statutory and actual damages he has sustained by reason of its violation of the FCRA, in an amount to be determined by the trier of fact, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681n.

## VII. Claims against Department Stores National Bank

137.   Upon information and belief, after being informed by consumer reporting agencies that Mr. Sinani disputed the accuracy that Department Stores National Bank/Macy's provided

concerning Mr. Sinani to consumer reporting agencies, DSNB/Macy's willfully failed to conduct a proper investigation of Mr. Sinani's dispute that he was not liable to DSNB/Macy's in connection with the DSNB/Macy's account ending in 1920 debt as falsely reported by DSNB/Macy's.

138. Upon information and belief, DSNB/Macy's willfully failed to review all relevant information purportedly provided by the consumer reporting agencies to DSNB/Macy's in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

139. Upon information and belief, DSNB/Macy's willfully failed to direct such consumer reporting agencies to delete inaccurate information about Mr. Sinani pertaining to the DSNB/Macy's account ending in 1920 debt as required by 15 U.S.C. § 1681s-2(b)(C).

140. DSNB/Macy's is liable to the plaintiff for statutory and actual damages he has sustained by reason of its violation of the FCRA, in an amount to be determined by the trier of fact, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681n.

## VII. Claims against 1st Financial Bank USA

141. Upon information and belief, after being informed by consumer reporting agencies that Mr. Sinani disputed the accuracy of information that 1st Financial Bank USA ("1st Financial") provided concerning Mr. Sinani to consumer reporting agencies, 1st Financial willfully failed to conduct a proper investigation of Mr. Sinani's dispute that he was not liable to 1st Financial in connection with the 1st Financial account ending in 3875 debt as falsely reported by 1st Financial.

142. Upon information and belief, 1st Financial willfully failed to review all relevant information purportedly provided by the consumer reporting agencies to 1st Financial in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

143. Upon information and belief, 1st Financial willfully failed to direct such consumer reporting agencies to delete inaccurate information about Mr. Sinani pertaining to the 1st Financial account ending in 3875 debt as required by 15 U.S.C. § 1681s-2(b)(C).

144. 1st Financial is liable to the plaintiff for statutory and actual damages he has sustained by reason of its violation of the FCRA, in an amount to be determined by the trier of fact, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681n.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Edmond Sinani requests the Court grant him relief as follows:

a. Award Plaintiff actual damages against each Defendant;

b. Award Plaintiff statutory damages against each Defendant;

c. Award Plaintiff reasonable attorney's fees and costs;

d. A trial by jury; and

e. Such other relief as may be just and proper.


Respectfully Submitted,

/s/ James H. Lawson
**James H. Lawson**
*Lawson at Law, PLLC*
4055 Shelbyville Road, Suite B
Louisville, KY 40207
Tel: (502) 473-6525
Fax: (502) 473-6561
james@kyclc.com